The facts are: Ilnie is twenty-nine years of age; is now, and lias been since the death of his father, in 1857, the overseer of his mother, who is a widow, and lives on, and owns a plantation in Cabarrus county ; and'has during.that time owned and kept on her plantation more than twenty negroes. She is upwards of sixty years of age, and no white person lives on the place except herself, and a daughter about 19 years of age. Ilnie owns, and lives on a place adjoining; has a wife and two small children ; no other white person on the place. The witness did not know whether Huie receives wages as an ■overseer, but if he does not, he knows that he earns wages, for ever since the death of his father he has managed his own negroes, (some thirteen or.fourteen) and has acted as the overseer of his mother, and attended to her business generally ; has been diligent; managed the negroes well; kept them in .good order, and made good crops. The affidavits required by ■the act are filed. Huie has for several years been afflicted •with bronchitis, and was not enrolled and ordered into service when the other Conscripts left the county, but on the 11th October, 1862, reported at the Camp of Instruction near ."Raleigh, when Dr. Baker certified as follows:
 

 Headquarters, Camp oe INStructioN, 1 Camp Holmes, Oct. 11, 1862. )
 

 I certify, on honor, that I have carefully examined Henry 'C. Ilnie, (Col. Earnhardt, 81th N. C. Militia,) and find him incompetent to fperform the duties of a soldier, because of ¡bronchitis. He is excused until 1st day of May, 1868.
 

 R. B. BAKER, Surgeon P. 0. S. A.
 

 Approved—
 

 J. 0. McRae, Capí, and A. A. G. P. 0. S. A.
 

 Iluie’s name was put on the roll at that date, and returned Home and remained there until his arrest.
 

 The construction, of the conscription and exemption act, like other acts <of Congress, so far as they concern the rights -of a citizen, as distinguished from military regulations and rules which the Secretary of War is authorized to prescribe, in order to carry the acts into effect, (for instance, the manner ■of having persons examined in order to determine whether
 
 *166
 
 they are fit for military service in the field,) is matter for the courts, and any construction put on the acts by the officers of the executive department, as to who is liable as a conscript, or who is entitled to exemption, is subject to the decision of the Judiciary. This principle of constitutional law is so clear, that I suppose it will be conceded by every one.
 

 In the matter of Mills, a shoemaker, Angel, a wagonmaker, and Nicholson, a miller, I decide that the exemption act applies to the conscription act of April as well as to the conscription act of September, and no discrimination is made between mechanics under or over the age of 35. Por the same reason, I am of opinion that the exemption act of May, which is an amendment of the act of October, applies to both conscription acts.
 

 I do not consider it necessary, for the purjfcses of this case, to decide the point made by
 
 Mr. Boyden,
 
 that it is the intention by the act of May to take out of the army and restore to their occupations, the overseers of femes sole, infants and lunatics, provided the persons were employed and acting as overseers previous to the 16th of April, 1862, and provided there is no white male adult on the' farm who is not liable to military duty, and provided affidavit is made that after diligent effort no overseer can be procured for the farm who is not liable to military duty, and provided $500 shall be annually paid into the public treasury by the owner of the farm or plantation. Por, I am of opinion, that supposing the- act not to embrace persons who are in service, the petitioner’s case fulfils all of the conditions and requirements of the act. He is now, was previous to the 15th April, 1862, and has been all the time since 1857, the overseer of a feme sole, &c.
 

 It is insisted on the part of Col. Mallett, that the petitioner was enrolled 11th October, 1862, and has been from that date constructively in the service of the Confederate States, and consequently, cannot during that time be considered as having been an overseer.
 

 This position depends on what amounts to an enrollment, and its legal effect. If an enrollment amounts to no more than writing a man’s name on a list with others, that was certainly done on the 11th October, 1862, but, if it is to have the.
 
 *167
 
 legal effect of putting a man in the actual or constructive service of the Confederate States, then, I am of opinion, that what was done on that day, was not valid as an enrollment; for the reason that Huie, by force of Dr. Baker’s certificate, was excluded from the operation of the conscription act, and was exempted, .being ascertained under the rules prescribed by the Secretary of "War
 
 “ to le unfit for military servido in the
 
 field/” so the commandant of conscripts had no right to have his name put on the roll
 
 ás a conscript,
 
 and instead of' doing so, and excusing him until the 1st of May, 1863, according to the rights of Huie, he should have been sent home, and tiie proper time for enrolling him would be after he recovered, and became fit for military service in the field, (if he happened .to recover) to be determined under the rules prescrib~ ed by the Secretary of War ; for, the law exempts all persons who shall be held unfit for
 
 milita'i'y
 
 service in the field, by reason of bodily infirmity, &c., under rules to be prescribed by the Secretary of War, and Dr. Baker, .acting under these rules, certifies that he is incompetent to perform the duties of a soldier. In other words, he is “ unfit for
 
 military
 
 service in thé field.” So, that he was
 
 ipso
 
 facto, exempted for the time being. In reply to this, it is said, the Secretary of War, by the Adj utant General, had prescribed a rule that persons unfit for military service in the field, shall be enrolled and may be put to service in the hospital, quartermaster, or a medical staff. So, the question is, had the Secretary of. War authority to have men unfit for
 
 military
 
 service in the field, enrolled as conscripts, on the ground that they might be of some service in hospitals, or on the quartermaster’s or medical staff. The acts exempts all persons held to be unfit for “ military service in the field,” and clearly, no rule prescribed by the-Secretary of War, could defeat this express provision ; for instance, no rule of his could make a man, with one arm, who is certified by the surgeon to be unfit for military service in the field, liable as a conscript, although he might answer some purpose about a hospital or be of some service to the quartermaster, because) whether a man is entitled to exemption or not depends on the construction of the act, which it is the privilege of the courts to make, and the authority of the Secre
 
 *168
 
 tary of War is simply to prescribe rules and make regulations in order to have the fact determined whether a man is or is not fit for military service in the field; for which purpose
 
 alone,
 
 the Representatives of the people in Congress assembled, to whose wisdom is confided the trust of making laws, had declared it necessary to take citizens from their homes against their consent. Thus far conscription is carried by our lawmakers, and no further. I was informed by Adjutant Pierce, who returned the body for Colonel Mallett, that this rule has been revoked; but he insists that acts done under it before it was revoked are valid. I do not concur in this position, for the reasons stated above ; and consider what is called an enrollment on 11th October, 1862, as void and of no legal effect. So, the petitioner, according to my view of the case, was employed and acting as the overseer of a feme sole owning, &c., &c., at. the time of his arrest, at the passage of the act, on the 11th October, 1862, on the 16th of April, 1862, and for several years previous thereto, and is entitled to exemption.
 

 R. M. PEARSON, O. J. S. 0.
 

 May 20th, 1863.